UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN OGLE,

        Plaintiff,

v.                                 Case No. 2:06-cv-278
                                   HON. GORDON J. QUIST

GERALD RILEY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Steven Ogle filed this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983 action against Defendant Gerald Riley, who is employed as Chaplain at the Alger Maximum Correctional Facility (LMF). Plaintiff alleges in his complaint that he is being deprived of his religious rights by Chaplain Riley through the denial of a baptism as well as denial of unleavened bread and wine. In addition, Plaintiff asserts that he has been forced to attend religious ceremonies against his will.

      Plaintiff, a professed Baptist, states that he has attended the "Protestant 'non-denominational' Christian" worship services since December 2005. Plaintiff claims that in November 2005, Defendant Riley came to his door and through intimidation made him sign a Declaration of Religious Preference, stating a preference for the Protestant/Christian religion against protests that he was Baptist. Plaintiff alleges he was told that if he did not sign the form he would not be able to attend any religious services. Additionally, plaintiff asserts that he requested to be baptized by full immersion in water by a Baptist minister but was denied this request by Defendant. Plaintiff claims that through these acts, Defendant has denied Plaintiff his First Amendment right to Freedom of Religion as provided by the Fourteenth Amendment.

Plaintiff filed a grievance regarding the above matter and appealed it through Step III of the process, to no avail.  Plaintiff now seeks damages in the amount of $25,000 and seeks declaratory and injunctive relief as well an order directing Defendant to perform the traditional anointment ceremony on Plaintiff.

Presently before the Court is Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.  *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139

(6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

      As stated above, Plaintiff contends that Defendant has violated his First Amendment right to freely practice his religion. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest." *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

      Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

      In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a

restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90. "Prison officials need not show that *no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

Applying these standards to this case, the undersigned concludes that Defendant's Motion for Summary Judgment should be granted. As stated above, Plaintiff claims that he has been denied unleavened bread and wine which are an integral part of the practice of his religion. Michigan Department of Corrections (MDOC) policy states that prisoners may not consume wine due to security concerns. Defendant states in his affidavit (docket #11, Exhibit 1) that grape juice is used as an alternative to wine in Baptist communion services at LMF, and is offered for communion along with unleavened bread.

Plaintiff also states that he has been denied a full immersion baptism in violation of his right to practice his religion and is seeking relief in the form of an order directing Defendant to perform an anointment ceremony on Plaintiff. Defendant's brief in support of the motion for summary judgment states that prison officials have determined that full immersion baptismal ceremonies cause serious security and custody issues due to the freedom of movement involved. The Seventh Circuit in *Johnson v. Smith* agreed that this restriction on the practice of religion was reasonable. *Johnson v. Smith*, 202 F.3d 273, 1999 WL 1075160 (C.A.7 (Wis.)) (unpublished) (copy

attached).  Defendant's affidavit also states that the costs connected with an immersion ceremony are unreasonably prohibitive.  In addition, attempts to secure assistance from local churches have been unsuccessful.  The Step II response to Plaintiff's grievance explains that a full immersion ceremony is not available due to lack of resources and an anointment ceremony is offered in its place.    The response goes on to state, "Chaplain Riley has agreed to provide you a traditional anointment baptismal ceremony, however you have declined."  Therefore, it appears that Plaintiff is seeking an order to direct an action that has already been offered to him and that he has declined.

Next, Plaintiff asserts that he has been forced to attend religious services against his will.  This assertion is contrary to Plaintiff's own statement that when services were discontinued in his unit due to lack of attendance, Plaintiff requested on several occasions to be allowed to be placed on the call out list for Christian worship services in another building at LMF.  Moreover, Defendant denies that Plaintiff has ever been forced to attend any religious service.  Nor has Plaintiff offered any evidence in support of this assertion.    In the opinion of the undersigned, Plaintiff's claim that his right to religious freedom has been infringed upon is unfounded.  Accordingly, the undersigned recommends that Defendant's motion for summary judgment be granted.

Additionally, Plaintiff's claim against the Defendant in his official capacity is barred by Eleventh Amendment immunity because Plaintiff does not state claims upon which relief can be granted.  *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability).  Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782

(1978) (State and Board of Corrections).  The State of Michigan has not consented to civil rights suits in the federal courts.  *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  The Eleventh Amendment therefore bars plaintiff's claims against the MDOC or official-capacity suits against its employees.  Accordingly, plaintiff's official capacity claims should be dismissed.

Defendant has also asserted the defense of qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite:  First, we determine whether a constitutional violation occurred;  second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known;  finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City*

*of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

       When making a qualified immunity analysis, the facts must be interpreted in the light

most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely

disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there

is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the

proceeding."  *Id.*

       The operation of the qualified immunity standard depends substantially upon the

level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful, but it is to say that in light of the preexisting law the
> unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert.*

*denied*, 520 U.S. 1157 (1997).

       The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been
> authoritatively decided by the United States Supreme Court, the
> Court of Appeals, or the highest court of the state in which the
> alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned,

Defendants is entitled to the defense of qualified immunity because he did not violate any of Plaintiff's clearly established rights.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's Motion for Summary Judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket # 10) be granted and this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendant's motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  January 16, 2008